UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DELMON ROBINSON                           CIVIL ACTION

VERSUS                                    No.: 17-6906

ERGON, INC., ET AL.                       SECTION: "J"(2)

## ORDER & REASONS

### NATURE OF MOTION AND RELIEF REQUESTED

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 32)** filed by Defendant, Magnolia Marine Transport Company, and an opposition thereto (Rec. Doc. 33) filed by Plaintiff, Delmon Robinson. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

This litigation derives from an accident which occurred aboard the M/V LAMPTON, a vessel owned and operated by Magnolia Marine Transport Company ("Magnolia"). Plaintiff, Delmon Robinson ("Robinson"), alleges that on August 2, 2014, he was injured when a cheater bar he was using to tighten a winch gave way and accidently struck his left kneecap. Shortly after the incident, Robinson underwent an arthroscopic surgery on his left knee. On April 28, 2015, Robinson's treating physician, Dr. Porter, released him to return to work after concluding that he had reached

maximum medical improvement ("MMI"). As a result of Dr. Porter's evaluation, Magnolia ceased the maintenance and cure payments that it had been paying to Robinson since the day of the accident.

Robinson began treating again with Dr. Porter in January 2017. At that point, Dr. Porter noted that Robinson was "headed for [a] total knee arthroplasty," but only prescribed Mobic, a nonsteroidal anti-inflammatory medication, and instructed Robinson to return for treatment as needed. Robinson returned for treatment on April 17, 2017, with complaints of persistent pain, which resulted in Dr. Porter ordering an MRI. The results of the MRI showed that Robinson had a medial meniscal tear in his left knee. On May 8, 2017, Dr. Porter determined that Robinson required another knee surgery. After conducting an informal mediation, Magnolia reinstated Robinson's maintenance and cure payments beginning on May 8, 2017, continuing to date.[1]

On September 19, 2017, Robinson filed the instant suit against Magnolia and others, seeking compensatory damages, maintenance and cure, punitive damages, and attorney's fees. Magnolia now moves for partial summary judgment on Robinson's claims for punitive damages and maintenance and cure. Essentially, Magnolia argues that it is entitled to judgment as a matter of law because Robinson: (1) has reached MMI, (2) concealed preexisting injuries

---

[1] On July 27, 2017, Dr. Porter performed a "partial medial meniscectomy, chondroplasty lateral femoral condyle, with revival of loose body, left knee." (Rec. Doc. 33-8 at 1).

to his left knee, and (3) engaged in willful misconduct by using marijuana during the term of his employment. The motion is now before the Court on the briefs and without oral argument.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l*

*Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### I. Maintenance and Cure

Magnolia contends that it is entitled to judgment as a matter of law on Robinson's maintenance and cure claim because Robinson has reached MMI. Robinson contends that summary judgment is inappropriate because a fact question remains as to whether he has reached MMI. In addition, Robinson contends that he is entitled

4

to continued maintenance and cure because he has not been cleared to return to his original job as a seaman.

"A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 441 (2001). Generally, a maritime employer's obligation to provide maintenance and cure ends when a doctor provides a qualified medical opinion that the plaintiff has reached the point of maximum medical recovery, also known as MMI. *See McBride v. Estis Well Serv., L.L.C.*, 853 F.3d 777, 783 (5th Cir. 2017) ("The maintenance and cure duty terminates only when maximum medical improvement has been reached."); *see also Breese v. AWI, Inc.,* 823 F.2d 100, 104 (5th Cir. 1987). MMI is reached when the seaman recovers from the injury, the condition permanently stabilizes, or the condition cannot be improved further. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1359 (5th Cir. 1987), abrogated on other grounds by *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995); *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979) ("[W]here it appears that . . . further treatment will merely relieve pain and suffering, but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum medical cure has been achieved."). The defendant bears the burden of proving that the plaintiff has reached MMI. *Weeks Marine, Inc. v. Watson*, 190 F. Supp. 3d 588,

597 (E.D. La. 2016) (citation omitted). Any ambiguities or doubts regarding entitlement to maintenance and cure or the date of MMI must be resolved in favor of the seaman. *See Caulfield v. AC&D Marine, Inc.*, 633 F.2d 1129, 1132 (5th Cir. 1981); *see also Gaspard v. Taylor Driving & Salvage Co.,* 649 F.2d 372, 374 n. 2 (5th Cir. 1981).

Here, it is undisputed that both doctors who examined Robinson—Dr. Porter and Dr. Haddad—have concluded that Robinson is currently at MMI.[2] Nevertheless, Robinson contends that a fact question exists as to whether he has actually reached MMI. The Court notes that Dr. Porter and Dr. Haddad have expressed conflicting opinions regarding whether Robinson will potentially need to undergo a total knee replacement—whereas Dr. Porter believes that Robinson may need a total knee replacement within the next fifteen to twenty years,[3] Dr. Haddad "would not consider [Robinson] a candidate for [a] total left knee arthroplasty in the near or distant future."[4] Indeed, two contrary opinions regarding diagnosis or prognosis of an injured seaman does not provide the unequivocal evidence required for termination of maintenance and cure benefits. *Tullos*, 750 F.2d at 388. However, given that both

---

[2] Dr. Porter, Robinson's treating orthopedist, believes that Robinson reached MMI on March 1, 2018. Dr. Haddad, who conducted an independent medical examination ("IME") on Robinson on November 7, 2017, stated in his report that he would have placed Robinson at MMI on December 1, 2014. (Rec. Doc. 32-2 at 39).
[3] (Rec. Doc. 33-8 at 4).
[4] (Rec. Doc. 32-2 at 39).

doctors agree that Robinson has reached MMI, no such contrary opinion exists in the case *sub judice*. Rather, Robinson seeks to have the Court disregard the doctors' shared medical determination of MMI and, instead, replace it with its own opinion as to the medical significance of the potential knee replacement.[5] The point of MMI is a medical determination, not a legal one, and Robinson has pointed to no alternative medical opinion that he is not at MMI. *Breese*, 823 F.2d at 104–05; *Tullos*, 750 F.2d at 388 ("It is the medical, not the judicial, determination . . . that terminates the right to maintenance and cure."); *Commings v. Mike Hooks, Inc.*, No. CIV.A.07-1099, 2008 WL 3975608, at *9 (E.D. La. Aug. 25, 2008). Thus, giving the doctors' opinions a fair reading and construing any ambiguity in favor of Robinson, the Court finds that Magnolia has carried its burden of proving that Robinson has reached MMI.[6] In addition, the Court concludes that in light of both doctors having determined that Robinson is at MMI, Dr. Porter's opinion that Robinson may need a knee replacement, without more, is insufficient to create a genuine issue of material fact necessary to overcome summary judgment.

---

[5] Although Robinson maintains that he has not reached MMI because a knee replacement is by nature performed to cure the underlying problem and better the patient's condition, Dr. Porter is silent as to whether he believes that the knee replacement will improve Robinson's condition.

[6] For this same reason, Robinson's argument that he is entitled to continued maintenance and cure because he has not been cleared to return to his original job as a seaman is also without merit. As discussed *supra*, "the cut-off point for maintenance and cure is not that at which the seaman recovers sufficiently to return to his old job but rather the time of maximum possible cure." *Lirette v. K & B Boat Rentals, Inc.*, 579 F.2d 968, 969 (5th Cir. 1978).

## II. <u>Punitive Damages</u>

Magnolia next seeks to dismiss Robinson's claim for punitive damages for the arbitrary and capricious denial of maintenance and cure. Robinson contends that he was not at MMI when Magnolia ceased paying maintenance and cure on April 28, 2015, and argues that Magnolia should have reinstated the payments on January 26, 2017, when Dr. Porter subsequently determined that he should not be doing any off-shore work.

"It is well-settled that a ship-owner who arbitrarily and capriciously denies maintenance and cure to an injured seaman is liable to him for punitive damages and attorney's fees." *Breese*, 823 F.2d at 103 (internal quotations omitted). "No bright line separates the type of conduct that properly grounds an award of punitive damages—a ship-owner's willful and callous default in its duty of investigating claims and providing maintenance and cure—from the type of conduct that does not support a punitive damages award." *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 90 (5th Cir. 1984). However, examples of employer behavior that could merit punitive damages have included (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; and (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically. *Tullos*, 750 F.2d at 388. Further, the "the willful, wanton and

callous conduct required to ground an award of punitive damages requires an element of bad faith." *Harper*, 741 F.2d at 90.

In order to carry his burden to defeat summary judgment, Robinson must establish a genuine issue of material fact regarding Magnolia's refusal to pay maintenance and cure by submitting or referring to evidence in the record. *Snyder v. L & M Botruc Rental, Inc.*, 924 F. Supp. 2d 728, 736–37 (E.D. La. 2013). As an initial matter, the Court notes that it is unclear whether Robinson's claim for punitive damages is based on: (1) Magnolia's decision to terminate maintenance and cure, or (2) Magnolia's failure to reinstate maintenance and cure payments once Dr. Porter determined that Robinson should not be doing any off-shore work. As for the former, it is evident that the initial cessation of maintenance and cure was warranted in light of Dr. Porter's finding that Robinson was at MMI. *See McBride*, 853 F.3d at 783. Moreover, with respect to the latter, the Court finds Robinson's argument regarding Dr. Porter's subsequent statement insufficient to support an award of punitive damages. First, the Court is not persuaded that Dr. Porter's opinion that Robinson "should not try to work off-shore" was enough to negate his prior finding of MMI.[7] Indeed, the ultimate issue of MMI is not contingent upon a

---

[7] "He should not try to work offshore anyway because of the pain in his knees is going to end up hurting himself on some sort of bladder [sic] or stairway. We prescribed some Modic today to see if that would help. I plan to see him back on a p.r.n. basis only." (Rec. Doc. 33-7 at 5).

9

plaintiff's ability to return to work.  *See Lirette v. K & B Boat Rentals, Inc.*, 579 F.2d 968, 969 (5th Cir. 1978) ("[T]he cut-off point for maintenance and cure is not that at which the seaman recovers sufficiently to return to his old job but rather the time of maximum possible cure.").  However, assuming *arguendo* that Dr. Porter's statement sufficiently established that Robinson had not in fact reached MMI, Robinson has not cited to any evidence whatsoever that he either requested that Magnolia reinstate maintenance and cure, or that Magnolia refused to reinstate maintenance and cure despite being aware of the statement.  *See Tullos*, 750 F.2d at 388 (remanding for the jury to decide the issue of arbitrary and capricious denial of maintenance and cure where counsel requested that the ship-owner reinstate maintenance and cure benefits after further diagnoses were obtained such that it was not medically certain that the plaintiff had reached MMI.); *c.f. Bosarge v. Cheramie Marine LLC*, 121 F. Supp. 3d 599, 605–06 (E.D. La. 2015) (denying the defendant's motion for partial summary judgment on plaintiff's claim for punitive damages where the defendant refused to reinstate maintenance and cure despite a second doctor's opinion that the plaintiff had not reached MMI and where the plaintiff had made repeated demands for maintenance and cure).  As such, the evidence in the record does not demonstrate that Magnolia unreasonably, much less arbitrarily and capriciously, refused to pay maintenance and cure.  The bad faith

required to justify an award of punitive damages is absent from this case. Robinson has failed to produce or reference evidence creating a genuine issue of material fact regarding his claim for punitive damages.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Magnolia's *Motion for Summary Judgment* **(Rec. Doc. 32)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Robinson's claims for punitive damages and maintenance and cure are hereby **DISMISSED** with prejudice.

New Orleans, Louisiana, this 9th day of July, 2018.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE